The Honorable Claud Cash State Representative 13477 Highway 463 North Trumann, Arkansas 72472
Dear Representative Cash:
This opinion is being issued in response to your recent question regarding the possible applicability of the monopoly laws to certain practices by the Northeast Arkansas Basketball Officials Association.
You indicate that the Northeast Arkansas Basketball Officials Association (NEABOA) is comprised of virtually all persons in Northeast Arkansas who are qualified to officiate at high school basketball games. School districts who wish to be assigned NEABOA officials to officiate at their basketball games must pay $100.00 to NEABOA. NEABOA in turn assigns officials to officiate at those districts' games. School districts pay the assigned officials the amount of $105.00 for officiating at games. This amount is set by NEABOA.
In light of these facts, you have presented the following question:
 Would an attempt by NEABOA to require that its members refrain from contracting to officiate at non-member school districts' basketball games constitute a violation of A.C.A. § 4-75-309 or any other state law?
It is my opinion that such an attempt by NEABOA would not constitute a violation of A.C.A. § 4-75-309, but that it could, depending upon the facts, constitute a violation of the common law prohibition of restraint of trade.
A.C.A. § 4-75-309 states, in pertinent part:
 Any corporation organized under the laws of this or any other state or country and transacting or conducting any kind of business in this state, or any partnership or individual, or other association or persons whatsoever, who is, or creates, enters into, or becomes a member of, or a party to, any pool, trust, agreement, combination, confederation, or understanding, whether it is made in this state or elsewhere, with any other corporation, partnership, individual, or any other person or association of persons, to regulate or fix, either in this state or elsewhere, the price of any article of manufacture, mechanism, merchandise, commodity, convenience, repair, any product of mining, or any article or thing whatsoever, . . . or who is, or enters into, or becomes a member of, or a party to any pool, agreement, contract, combination, association, or confederation, whether made in this state or elsewhere, to fix or limit in this state or elsewhere, the amount or quantity of any article of manufacture, mechanism, merchandise, commodity, convenience, repair, any product of mining, or any article or thing whatsoever, . . . shall be deemed and adjudged guilty of a conspiracy to defraud and be subject to the penalties as provided by this subchapter.
A.C.A. § 4-75-309.
The Arkansas "Anti-Trust Act," as the above-quoted provision has been called, is an archaic and little-used statute that has been given narrow applicability by the courts. See State ex rel. Moose v. Frank,114 Ark. 47, 169 S.W. 333 (1914); State ex rel. Means v. Chicago, R.I. P. Ry., 95 Ark. 114, 128 S.W. 555 (1910); Ft. Smith Light Traction Co. v. Kelley, 94 Ark. 461, 127 S.W. 925 (1910). The statute has been held not to apply to labor or services. Moosev. Frank, supra at 52.
For this reason, it is my opinion that A.C.A. § 4-75-309 does not apply to referee services that are supplied by the members of NEABOA.
NEABOA's restriction could, however, depending upon the related facts, constitute a violation of the common law prohibition of "restraint of trade." Although this common law principle has been largely supplanted in most jurisdictions with anti-trust statutes of broader applicability than Arkansas' statute, see discussion set forth in 54 Am.Jur.2d Monopolies,
§§ 443 et seq. and "Application of State Antitrust Laws to Athletic Leagues or Associations," 85 A.L.R.3d 970, the doctrine has not been superseded, and therefore remains a viable basis for a possible cause of action.
Generally speaking, concerted refusals to deal and boycotts by associations of persons not dealing exclusively with its members have been traditionally held illegal under common law. 54 Am.Jur.2d at 1009. This common law principle has rendered unlawful such concerted practices as a businessmen's association's refusal to deal with nonmembers, a granite manufacturers' association's fining its members for their purchases of granite from nonmembers, and a contractors' association's agreement among members not to bid on county jobs against nonmembers of the association. 54 Am. Jur.2d §§ 585 et seq., citing Harelson v. Tyler,281 Mo. 383, 219 S.W. 908; Hawarden v. Youghiogheny L. Coal Co.,111 Wis. 545, 87 N.W. 472; Martell v. White, 185 Mass. 255, 69 N.E. 1985;Jackson v. Sullivan, 276 Ky. 666, 124 S.W.2d 1019.
Although the Arkansas Supreme Court apparently has never addressed a fact scenario that is analogous to the situation that you have described, the court has discussed the common law doctrine of restraint of trade in other contexts.[1] In doing so, the court has stated the general elements that must be considered in determining whether a particular arrangement constitutes an unlawful restraint of trade. First, the arrangement must not be any more extensive than necessary to protect the interest of the party in whose favor it operates; second, it must not be so extensive as to harm the public interest. Federated Mut. Ins. Co. v.Bennett, 36 Ark. App. 99, 818 S.W.2d 596 (1991) ; Duffner v. Alberty,19 Ark. App. 137, 718 S.W.2d 111 (1986); Hyde v. C.M. Vending,288 Ark. 218, 703 S.W.2d 862 (1986). The court has also explicitly stated that arrangements that are entered into for the sole purpose of limiting competition are not enforceable. Federated Mut., supra; Duffner, supra.
A determination of whether these general elements of restraint of trade exist in any situation is a factual determination that will depend upon all of the attendant circumstances and information. Easley v. Sky, Inc.,15 Ark. App. 64, 689 S.W.2d 356 (1985). This office is not authorized to undertake factual determinations of this nature. Therefore, I am unable to opine conclusively as to whether NEABOA's restriction constitutes a common-law restraint of trade. Only a court is competent to make a definitive determination of this nature.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Suzanne Antley.
Sincerely,
WINSTON BRYANT Attorney General
WB:SBA/cyh
[1] The Arkansas decisions on common law restraint of trade have for the most part primarily involved covenants against competition, either in an individual employment situation, or ancillary to the sale of a business. See, e.g., Federated Mut. Ins. Co. v. Bennett,36 Ark. App. 99, 818 S.W.2d 596 (1991); Duffner v. Alberty,19 Ark. App. 137, 718 S.W.2d 111
(1986); Hyde v. C.M. Vending, 288 Ark. 218, 703 S.W.2d 862
(1986); Easley v. Sky, Inc., 15 Ark. App. 64, 689 S.W.2d 356 (1985).